IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JEFF MALOTT                                                                                      PLAINTIFF

CASE NO. CV-2015-5103

PHYSICIANS' SPECIALTY HOSPITAL, LLC
CHRISTOPHER ARNOLD,
JAMES BLANKENSHIP, DEAN BRIGHT,
DAVID CANNON, WES COX,
STEPHEN PIROTTA, MARK POWELL, TERRY SITES,
LLOYD TRICHELL, DAN FULMER, RUSS GREENE,
RHONDA MCCABE, DEBORAH AUSTIN,
PAUL SOULSBY

JOHN DOE I
JOHN DOE II
JOHN DOE III                                                                                     DEFENDANTS

**AMENDED COMPLAINT**

COMES NOW the Plaintiff, Jeff Malott, by and through his attorneys, Andrew Hatfield and Andrea McCurdy, of Hatfield Harris, PLLC, and for his Amended Complaint, against the Defendants states and alleges as follows:

I. Nature of Action.

1. This action is brought regarding issues of federal law arising under the Medicare Improvements for Patients and Providers Act, 42 C.F.R. §414.68 (hereinafter "MIPPA") and 42 U.S.C. §1395nn; to redress violations of Ark. Code Ann. 17-106-201, *et seq* and Ark. Code Ann. 17-106-202, *et seq*; violation of an implied covenant of good faith and fair dealing; and the existence of such outrageous and extreme circumstances that render this action tortious. This Court has original jurisdiction

1

over causes of action involving 42 C.F.R. §414.68 and 42 U.S.C. §1395nn, and causes of action herein arising under Arkansas law based on supplemental subject matter jurisdiction.

II. <u>Parties, Jurisdiction, and Venue</u>.

2. Plaintiff is a resident of Washington County, Arkansas.

3. Separate Defendant, Physicians' Specialty Hospital, LLC ("PSH"), is a hospital conducting business and is operating as an Arkansas for-profit corporation with its principal place of business located in Fayetteville, Washington County, Arkansas, and can be served through its registered agent, Bryan G. Looney, 234 E. Millsap Road, Suite 400, Fayetteville, Arkansas 72703.

4. Upon information and belief Separate Defendant, Christopher Arnold, is a licensed Arkansas physician practicing medicine in Washington County, Arkansas. It is further believed that Defendant, Christopher Arnold, owns an interest in Physicians' Specialty Hospital.

5. Upon information and belief Separate Defendant, James Blankenship, is a licensed Arkansas physician practicing medicine in Washington County, Arkansas. It is further believed that Defendant, James Blankenship, owns an interest in Physicians' Specialty Hospital.

6. Upon information and belief Separate Defendant, Dean Bright, is a licensed Arkansas physician practicing medicine in Washington County, Arkansas. It is further believed that Defendant, Dean Bright, owns an interest in Physicians' Specialty Hospital.

7. Upon information and belief Separate Defendant, David Cannon, is a licensed Arkansas physician practicing medicine in Washington County, Arkansas. It is further believed that Defendant, David Cannon, owns an interest in Physicians' Specialty Hospital.

8. Upon information and belief Separate Defendant, Wes Cox, is a licensed Arkansas physician practicing medicine in Washington County, Arkansas. It is further believed that Defendant, Wes Cox, owns an interest in Physicians' Specialty Hospital.

9. Upon information and belief Separate Defendant, Stephen Pirotta, is a licensed Arkansas physician practicing medicine in Washington County, Arkansas. It is further believed that Defendant, Stephen Pirotta, owns an interest in Physicians' Specialty Hospital.

10. Upon information and belief Separate Defendant, Mark Powell, is a licensed Arkansas physician practicing medicine in Washington County, Arkansas. It is further believed that Defendant, Mark Powell, owns an interest in Physicians' Specialty Hospital

11. Upon information and belief Separate Defendant, Terry Sites, is a licensed Arkansas physician practicing medicine in Washington County, Arkansas. It is further believed that Defendant, Terry Sites, owns an interest in Physicians' Specialty Hospital.

12. Upon information and belief Separate Defendant, Lloyd Trichell, is a licensed Arkansas physician practicing medicine in Washington County, Arkansas. It is further believed that Defendant, Lloyd Trichell, owns an interest in Physicians' Specialty Hospital.

13. Upon information and belief Separate Defendant, Dan Fulmer, owns an interest in Physicians' Specialty Hospital, is now retired from practice, and resides in Tuscon, Arizona.

14. Upon information and belief Separate Defendant, Russ Greene, either presently owns or at the time of Mr. Malott's termination owned an interest in Physicians' Specialty Hospital.

15. Upon information and belief Separate Defendant, Rhonda McCabe, is the Chief Executive Officer of Physicians' Specialty Hospital.

16. Upon information and belief Separate Defendant, Deborah Austin, is the Human Recourses Director of Physicians' Specialty Hospital.

17. Upon information and belief Separate Defendant, Paul Soulsby, is the Chief Financial Officer of Physicians' Specialty Hospital.

18. All events related to this Complaint occurred in Washington County, Arkansas.

19. This Court has jurisdiction over the issues of and the parties to this action pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1367.

20. Venue for this action is properly laid in this Court pursuant to 28 U.S.C. 1391.

III. <u>General Allegations</u>.

21. That the Plaintiff, Jeff Malott, was hired at Physician's Special Hospital on or about August 2013 as the Director of the Medical Imaging Department.

22. The Department of Medical Imaging is responsible for handling images for outside clinics/physicians, as well as images for Physician's Specialty Hospital.

23. Jeff Malott served as Director of Medical Imaging/Radiology, with duties specified in his job description, including the following:
    a. "The focus of this position is the active participation in a Radiology Department that achieves quality outcomes."
    b. Particular emphasis is directed toward staff development, continuous quality improvement, and financial accountability."
    c. "This requires analysis and synthesis of information from a variety of sources in order to plan, implement and evaluate interventions based on research and standards of practice."
    d. "Consulting with administration and staff regarding risk management issues".
24. On or about November of 2013, the Plaintiff received a letter from Defendant, James Blankenship, concerning labeling images for Dr. Blankenship.
25. Pursuant to this letter, Dr. Blankenship directed Mr. Malott to have his radiology personnel label films/images for Dr. Blankenship.
26. Pursuant to Ark. Code Ann. §17-106-201, *et seq.* a radiology technologist/assistant is not permitted to interpret radiology images. The American Registry of Radiologic Technologists ("ARRT") guidelines and licensing direct that "labeling images" constitutes interpretation.
27. Physicians' Specialty Hospital advertises on their web page that their technologists are "registered;" however, to remain registered they must follow the ARRT guidelines and American College of Radiology (ACR) guidelines.

28. Additionally, federal law under MIPPA requires accreditation by one of three organizations: Intersocietal Accreditation Commission, American College of Radiology, or Joint Commission for advanced diagnostic imaging services such as diagnostic MRI, CT, nuclear medicine, and PET scans, that are billed under Part B of the Medicare Physician Fee Schedule.

29. The Medical Imaging Department at Physicians' Specialty Hospital performed these imaging services for outside clinics, including Dr. Blankehship's private practice. Plaintiff also has reason to believe that Dr. Blankenship billed for the interpretation services that were performed by Mr. Malott's staff in the Medical Imaging Department.

30. On or about December of 2013, Mr. Malott received a letter from Dr. Blankenship threatening to send his business elsewhere if his demands to label his images and deliver them to his private practice were not met.

31. On or about January of 2014, Dr. Blankenship sent a letter complaining that the delivery of this films were late.

32. On or about February of 2014, Mr. Malott met with Kelly Oliver, who was the CNO for PSH at the time. Mr. Malott informed Mr. Oliver that Dr. Blankenship was making demands on his imaging department that violate the American Registry of Radiologic Technologists and American , as specified in the licensing requirements under MIPPA, as well as the Arkansas State Medical Board and Arkansas law.

33. On or about May of 2014, Mr. Malott sent an anonymous letter to the Office of Inspector General reporting the possible violations by Dr. Blankenship.

34. On or about July of 2014, Mr. Malott met with Dr. Cannon, Dr. Elliott, Stephine Phillips, and Russ Greene to discuss the compliance issues with Dr. Blankenship's demands on the imaging department at PSH.

35. Mr. Malott also discussed Dr. Blankenship's violation of self-referral laws under 42 U.S.C. §1395nn, which limits and/or prohibits certain self-referrals by a physician if the physician has a financial relationship with the entity furnishing the health services. Dr. Blankenship regularly made these self-referrals, without authorization or contract to do so, and without peer review. Dr. Blankenship has a financial relationship as an owner of PSH. Mr. Malott informed appropriate personnel of this violation, and explained that if peer review in place or if a contract were in place, it would help bring PSH into compliance in this area. Mr. Malott's warnings were ignored.

36. On or about August of 2014, Mr. Malott called a meeting with the contracted radiologist group (RAPA), the CNO and CEO of PSH to discuss the compliance issues further. The purpose of this meeting was to inform the CNO and CEO that the hospital was not complying with federal and Arkansas law and that Dr. Blankenship's demands to have radiology techs interpret films could not be met.

37. On or about October of 2014, Mr. Malott's employment with PSH was terminated.

38. In a recorded meeting, Defendants justified Mr. Malott's termination in part on his performance to appease Dr. Blankenship in his private practice, although it was not part of his actual employment at PSH.

39. In this recorded meeting, Defendants further stated their reason for terminating Mr. Malott's employment as his efforts to bring the hospital into compliance with the law in order to protect the public and to protect his staff.

40. All defendants were aware of Dr. Blankenship's demands to violate the law, and in recorded meetings many hospital physicians/administration/staff members discussed attempts to appease Dr. Blankenship's demands even after being informed of the various laws, policies, and standards of care that would be violated.

41. Dr. Blankenship's continual requests for Mr. Malott to violate the law put patients at great risk, patients who had trusted Dr. Blankenship to perform neurospine surgery, who were unaware that Dr. Blankenship was relying on technologists' unlawful interpretation of their imaging films to determine the nature of their surgery, and who were unaware that there was no peer review regarding their diagnoses from this interpretation.

IV. <u>Count One-Wrongful Termination</u>

42. Plaintiff went to great lengths to assure PSH's compliance with all industry standards, federal and state regulations, and contracts.

43. As a result of Plaintiff's actions repeatedly notifying PSH owners, CEOs of PSH, and CNOs of PSH of the lack of compliance with federal and Arkansas law that Dr. Blankenship demanded his department continue, the Plaintiff was wrongfully terminated.

44. Arkansas is an employment at will state. However, there is a public policy exception carved out which allows a cause of action for wrongful termination if the employee

was terminated due to refusal to violate a federal or state statute or other public policy.

45. Mr. Malott made numerous attempts to educate all parties of interest of Dr. Blankenship's violations of federal law under 42 C.F.R. §414.68 (MIPPA) and 42 U.S.C. §1395nn (self-referral statutes), as well as the Arkansas state statutes regarding imaging interpretation and certification.

46. This cause of action is also sounded in contract, and Defendant have breached this contract, and violated an implied covenant of good faith and fair dealing.

47. Pursuant to Ark. Code Ann. 17-106-202, "a radiologist assistant or radiology practitioner assistant shall not interpret images, make diagnoses, or prescribe medications or therapies…"

48. Pursuant to the American Registry of Radiologic Technologists guidelines, "labeling" images constitutes interpretation.

49. Defendant, James Blankenship, directed Mr. Malott to have his radiology personnel in the imaging department of PSH labels films for him.

50. Defendant, James Blankenship, sent numerous documents of communication demonstrating his reliance on these labels during surgery, putting patients at clear risk of inaccurate surgical procedures based on PSH's imaging employees' lack of authority and license to make such interpretations.

51. Dr. Blankenship's directives to Mr. Malott to have his personnel interpret films, as well as participate in Dr. Blankenship's self-referral scheme, are clear violations of established federal and state law and public policy.

52. Plaintiff suffered an adverse action, that is termination of his employment, because he communicated in good faith to the appropriate persons the existence of violations of a law, rule, or regulation.

53. Defendants have retaliated against the Plaintiff for refusal to violate well-established law or policy.

54. As a result of Defendants' unlawful acts, Plaintiff has suffered loss of income, loss of fringe benefits, and job security.

55. As a result of Defendants' unlawful acts, Plaintiff has suffered humiliation, embarrassment, mental distress and emotional anguish, loss of self-esteem, and harm to personal and business reputation.

V. <u>Count Two – Tortious Conduct of Intentional Infliction of Emotional Distress and Outrage.</u>

56. Dr. James Blankenship used his power as an owner of an interest in Physicians Specialty Hospital to force Jeff Malott to perform tasks for his private practice that were not part of his job duties as Director of Imaging for Physicians Specialty Hospital.

57. Dr. Blankenship wrote numerous letters and emails threatening Jeff's termination if he would not comply with his requests to deliver films to his private practice, and if he did not force his radiology technologists to break the law and label/interpret his private practice films.

58. Dr. Blankenship communicated his frustration with Mr. Malott's attempts to bring the hospital into compliance with the law to other physicians and members of PSH

administration and staff, to the extent that in one recorded meeting another physician or board/administration/staff member commented to Mr. Malott that he was on Dr. Blankenship's "shit list."

59. Dr. Blankenship's conduct was outrageous and extreme, willfully and wantonly performed and spoken, and caused Mr. Malott severe emotional distress.

60. Dr. Blankenship continually and repeatedly threatened to terminate Mr. Malott's employment with PSH if he did not comply with his orders to violate not only federal law and Arkansas law, but public policy. His demands for Mr. Malott to have technologists, who are specifically forbidden by statute, to interpret his films, along with his threats to terminate his employment should Mr. Malott not comply, were so outrageous that he knew or should have known they would inflict emotional distress as a result.

61. Dr. Blankenship's conduct was beyond all bounds of decency and unable to be tolerated in a civilized society. Dr. Blankenship's conduct was the cause of Mr. Malott's distress.

62. As a result, Mr. Malott suffered such severe distress under these demands and threats that no reasonable personal could be expected to endure it.

63. As a result of Defendants' unlawful acts, Plaintiff has suffered humiliation, embarrassment, mental distress and emotional anguish, loss of self-esteem, and harm to personal and business reputation.

VI. <u>Relief Requested</u>.

64. Plaintiff asks this Court to enter judgment in his favor against Defendants, jointly and severally, for:

A. Damages for loss of income and fringe benefits.

B. Damages for humiliation, pain, suffering, emotional distress, and loss of reputation.

C. Punitive damages.

D. The costs of this action including a reasonable attorney's fee.

E. Such injunctive or equitable relief as the Court deems proper.

F. Such other and future relief as the Court deems proper.

65. Plaintiff demands a trial by jury.

Respectfully submitted,
Jeff Malott/Plaintiff

BY: _____*/s/ Andrea D. McCurdy*_____
Andrew H. Hatfield, ABA No. 2002116
Andrea D. McCurdy, ABA No. 2013066
Hatfield Harris, PLLC
5208 Village Parkway, Suite #9
Rogers, AR  72758
Phone (479) 715-6767
Fax (479) 715-6839
andrew@hatfieldharris.com
andrea@hatfieldharris.com

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on August 3, 2015, which will provide notification of this filing to all attorneys of record for the above case.

___/s/ *Andrea D. McCurdy*_____